IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| **FABIAN MARIEUS FORMOSA,** | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No: |
| | ) | |
| v. | ) | |
| | ) | Judge: |
| William Lee, Governor of the State of Tennessee, in his official Capacity; | ) ) ) | |
| | ) | |
| | ) | Magistrate Judge: |
| *and,* | ) | |
| | ) | |
| David Rausch, Director of the Tennessee Bureau of Investigation, in his official Capacity; | ) ) ) ) | JURY DEMAND |
| | ) | |
| *and,* | ) | |
| | ) | |
| Metropolitan Government of Nashville and Davidson County, Tennessee | ) ) ) | |
| | ) | |
| *Defendants.* | ) ) ) | |

## COMPLAINT

1. Plaintiff FABIAN MARIEUS FORMOSA brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendants have violated and continue to violate Plaintiff's Constitutional right against *ex post facto* punishment through retroactive imposition on him of Tennessee's sex offender restrictions and monitoring

requirements. Plaintiff seeks declaratory relief and injunctive relief against all Defendants, and money damages against Defendant Metro.

## PARTIES

2. Plaintiff is an adult resident of Tennessee and may be contacted through undersigned counsel to this complaint.

3. Defendant William Lee is the Governor of the State of Tennessee.

4. Defendant David Rausch is the Director of the Tennessee Bureau of Investigation, a state agency with a primary enforcement role in Tennessee's sex offender registration scheme.

Defendant Metropolitan Government of Nashville Davidson County, Tennessee ("Metro") is a municipal government entity organized under the laws of the State of Tennessee and located in Davidson County, Tennessee.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

### A. Plaintiff's Background

6. Plaintiff is a sixty-six-year old father with a large extended family in Nashville, Tennessee.

7. On __DATE__1988, Plaintiff was convicted in the Davidson County, Tennessee Criminal Court of three (3) counts of "Aggravated Rape" under T.C.A. § 39-2-603[1] for offenses Plaintiff committed on May 6, 1987.

8. He was sentenced to three concurrent terms of twenty-five (25) years imprisonment.

9. Solely due to Plaintiff's 1987 offenses, Tennessee law deems Plaintiff a "Violent Sexual Offender" subject to lifetime registration on the Tennessee sex offender registry.

10. Tennessee's laws deeming Plaintiff a "Violent Sexual Offender" and subjecting him to a multitude of obligations and restrictions were all passed into law several years after Plaintiff committed the offenses.

B. <u>Tennessee's Sex Offender Registration Monitoring Regime</u>

11. In 1994, seven (7) years after Plaintiff committed these offenses and was sentenced to prison, Tennessee passed its first sex offender registry law, requiring only that offenders register in a private law enforcement database.

12. In the years since then, Tennessee has repeatedly enacted laws adding to its sex offender registration regime in ways that make it more onerous, more public, and more restrictive for offenders.

13. In 2003 and 2004, Tennessee passed sweeping new restrictions on convicted sex offenders, hereinafter referred to as "SORA."

---

[1] T.C.A. § 39-2-603 was replaced on November 1, 1989 by T.C.A. § 39-13-502, which designated the crime as a Class A felony.

14. SORA Imposed stringent registration and reporting requirements on statutorily defined "sexual offenders" and "violent sexual offenders," and severely limited where sex offenders can live, work, and be physically present.

15. In the years since then, Tennessee has periodically enacted amendments to SORA, almost all of which have made it even more draconian, intrusive, and punitive.

16. Under present law, [2] Tennessee's SORA regime imposes the following affirmative obligations upon Plaintiff, on pain of criminal prosecution:

    a. Quarterly registration with local law enforcement;

    b. Payment of annual registration and monitoring fees;

    c. Re-registration or reporting in-person within forty-eight (48) hours if Plaintiff establishes or changes his primary or secondary residence, establishes a physical presence at a particular location, becomes employed or practices a vocation or becomes a student in this state;

    d. Re-registration or reporting in-person within forty-eight (48) hours of a change in any other information given to the registering agency by the offender that is contained on the registration form.

    e. Within three days of changing "internet communication name or identity information," an offender must report the change.

    f. When in public, always carry his state dash issued identification with him, which must have a "violent sex offender" designation on it.

---

[2] T.C.A. § 40-39-201 *et seq.*

17. . Tennessee's SORA regime includes a "Tennessee Sex Offender Registry" website maintained by the Tennessee Bureau of Investigation ("TBI), which makes the following information about the Plaintiff public (Exhibit 1):

    a. Name

    b. Classification of "VIOLENT"

    c. Status "ABSCONDER"

    d. Date of offense

    e. Description of offense

    f. TCA code for offense

    g. residential address

    h. vehicle description (make, model, color)

    i. license plate number

    j. complete criminal history

    k. hair and eye color

    l. height and weight

    m. gender and race

    n. Date of birth and driver's license number

    o. Last registration date; last report date; last date of information verification.

18. SORA prohibits Plaintiff from the following, on pain of felony criminal prosecution:

a. Working or residing within 1000' feet of a school, day care center, other child care facility, public park, playground, recreation center, or public athletic field;

b. Having any contact or residing within 1000' feet of the victim from Plaintiff's 1987 case, or the victim's family members;

c. Any of the following, unless picking up or dropping off his own child at school after giving written notice of his sex offender status to the school's principal, or attending a conference with officials at a school, day care, child care, recreation center, or playground with written permission from the administrator:

    i. Entering the premises of any school, day care center, other childcare facility, public park, playground, recreation center, or public athletic field when there is reason to believe that children may be present;

    ii. "Stand[ing], sit[ting] idly, or remain[ing]" within 1000' feet of any school, day care center, other childcare facility, public park, playground, recreation center, or public athletic field "while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there;"

    iii. Being within any vehicle owned, leased, or contracted by a school, day care, childcare, or recreation center when children under 18 years of age are present;

d. Residing with two or more other convicted sex offenders;

e. Being alone with a minor in a "private area."

f. Residing with, or having an overnight visit, in a place in which a minor is present.

19. SORA authorizes the following:

a. Public libraries may ban Plaintiff from their premises;

b. b    Municipalities may implement a "community notification system" to alert members of the public should Plaintiff indicate his intention to move there;

c. A municipality where Plaintiff resides may charge Plaintiff up to $50.00 per year toward the cost of its community notification system;

20. Under SORA, Plaintiff must comply with all of the mandates and prohibitions detailed at ¶¶ 17-20 for the rest of his life solely due to his 1987 offenses.

C. <u>Metro Nashville Police Department Policy and Practice of Enforcing Tennessee's Sex Offender Registry Regime</u>

21. After Tennessee adopted SORA, the Metro Nashville Police Department ("MNPD") assigned detectives from its "Sex Crimes Unit" to work full time in SORA enforcement and provided its SORA detectives with a full-time administrative assistant.

22. MNPD enacted formal policies charging its "Sex Crimes Unit" with responsibility to "maintain the Sex Offender Registry," with responsibility for:

a. Registration of offenders.

      b. Offender Compliance; and

      c. Coordination of Enforcement Actions.

23. MNPD has consistently required its SORA detectives to proactively enforce SORA through home verifications and compliance checks of identified sex offenders, sex offender "compliance operations" undertaken in concert with other units, investigation of possible SORA violations, arrests for SORA violations, and prosecutions of alleged SORA violations.

24. The MNPD SORA unit proactively cooperates with other outside agencies such as Immigration and Customs Enforcement (ICE), the Tennessee Department of Corrections ("TDOC"), the U.S. Marshals Service, and the Tennessee Bureau of Investigation ("TBI") to engage in numerous other officially-sanctioned actions to enforce Tennessee's SORA regime through the proactive arrest and criminal charging of alleged SORA violators.

25. As a matter of policy, MNPD has always enforced SORA indiscriminately against all persons deemed under Tennessee law to be "sexual offenders" and "violent sexual offenders," without making any exceptions for those persons whose offenses predated the passage of Tennessee's SORA laws unless specifically ordered to do so by a court.

26. Beginning in 2020, MNPD has been court-ordered to cease SORA enforcement on several specific individuals on the basis that their qualifying sex offenses predated the enactment of SORA.

27. Notwithstanding the court orders referenced in paragraph 26, and the legal memoranda accompanying those orders, Metro has continued to indiscriminately enforce SORA on all persons deemed sex offenders under Tennessee law without regard to whether the person's qualifying offense predated the enactment of SORA.

28. While Tennessee law does require local law enforcement agencies such as Metro to participate in the registration of sex offenders, Tennessee law does not require local law enforcement agencies to take additional proactive SORA enforcement measures.

29. Tennessee law never requires law enforcement officers to arrest or file criminal charges against SORA violators.

### D. Specific Impacts of SORA on Plaintiff

30. Solely due to his 1987 offenses, Plaintiff has been subjected to the SORA's ever-increasing requirements.

31. Plaintiff is confused by SORA and has never fully understood the obligations imposed upon him.

32. Plaintiff has violated the SORA reporting requirements unknowingly, believing that short intervals of time traveling to visit family were exempt from the 48-hour reporting requirement triggered by "establishing a physical presence at a particular location."

33. Plaintiff has violated SORA by failing to register rental cars and failing to register a replacement vehicle.

34. Plaintiff is forced to tailor his life around the geographic restrictions promulgated by SORA and has historically experienced great difficulty in finding a desirable place where he may live and work without running afoul of SORA's restrictions.

35. Plaintiff was unable to find housing in Nashville due to the "exclusion zones" created by the 1000ft restrictions in SORA and was forced to establish residence in a separate, more rural county, away from friends and family. This isolation further exacerbated lifelong struggles with substance abuse.

36. SORA has further complicated the logistics surrounding Plaintiff's plans to address ongoing substance abuse and behavioral conditions, finding himself excluded from participating at certain treatment facilities due to his status as a violent sex-offender.

37. The geographic restrictions and exclusion zones created and imposed by SORA prevented Plaintiff from joining gymnasiums, accelerating the deterioration of Plaintiff's physical and mental wellbeing.

38. The in person reporting and supervision restrictions imposed upon Plaintiff are more stringent than those of probation and parole and have a similar effect.

39. The publication of his image and last name with the words "violent sex offender" across the internet and Twitter have further distanced him from family members.

40. The persistent stigmatization and humiliation which accompanies lifelong status as a "violent sex-offender" has had deleterious effects on the Plaintiff's mental health and the lifelong restrictions accompanying such status have interfered with his ability to parent his children, two of whom are adults and currently reside in the vicinity of Los Angeles, California and one of which is a six-year-old that the Plaintiff gave up for adoption.

41. Plaintiff fears unknowingly violating SORA's registration and/or geographic exclusions during travel to see his children.

42. Plaintiff has not been charged with any sexual offenses since the 1987 offenses for which he is registered but has been charged with violating the sex offender registry seven (7) times; three violations are currently pending.

43. Plaintiff has expended untold resources in defending against charges brought against him for violations of SORA.

44. Plaintiff has spent time incarcerated for violations and currently faces further incarceration for pending violations.

45. Even in periods of compliance, Plaintiff fears that he will be charged with violating SORA for technical reasons or for reasons beyond his understanding and that these charges will result in his imprisonment.

46. The permanent application of SORA's restrictions to Plaintiff emulates retribution since they are imposed upon him on the basis of his 1997 offenses, not his likelihood of reoffending.

47. At the time of the filing of this Complaint, Plaintiff stands accused of violating SORA.

48. The Tennessee Sex Offender Registry website contains a page intended to identify offenders who are alleged to be in violation of SORA. The homepage of the website provides a photo and a link to the offender demographics page described *supra* and pictured as Exhibit 1. (Exhibit 2).

49. Additionally, on Fridays, the Tennessee Bureau of Investigation, via their agency Twitter page, elicits information as the whereabouts of offenders alleged to be in violation of the Sex Offender Registry. The TBI's March 11, 2022 "#FugitiveFriday" post features Plaintiff's image and a request for information. (Exhibit 3).

50. The repeated and persistent public shaming that occurs by publishing Plaintiff's image and status as a "violent sex-offender" has further isolated him from friends, family, and society at large.

## CLAIMS FOR RELIEF

### COUNT I: EX POST FACTO VIOLATION IN VIOLATION OF ARTICLE I, § 10 OF THE U.S. CONSTITUTION (42 U.S.C § 1983)

**(ALL DEFENDANTS)**

51. Plaintiff hereby reincorporates paragraphs 1 – 51 by reference.

52. As applied to Plaintiff, Tennessee's SORA regime constitutes "punishment" within the meaning of the *ex post facto* clause of Article I, § 10 of the U.S. Constitution.

53. Defendants Lee and Rausch are proper official capacity defendants because they both have roles in enforcing Tennessee's SORA regime.

54. Defendant Metro has a policy and practice of consciously choosing to enforce Tennessee's SORA regime through proactive enforcement measures, including the proactive arrest and initiation of criminal charges against SORA violators.

55. Metro's policy does make any exception from these proactive enforcement actions for offenders whose qualifying sex offenses predate Tennessee's enactment of the SORA laws, even though Metro has previously been ordered to do so by courts hearing individual *ex post facto* claims made by individual offenders.

56. Tennessee law does not require Defendants Metro and Dickson to engage in the proactive enforcement of the SORA regime, or to arrest or initiate criminal charges against SORA violators.

57. However, Tennessee law does compel Metro to participate in the registration component of the SORA regime.

58. Plaintiff is entitled to declaratory and injunctive relief prohibiting all three Defendants from continuing to enforce Tennessee's SORA regime on him in violation of his constitutional right against *ex post facto* punishment.

59. Plaintiff is entitled to financial damages against Defendant Metro and for retroactively proactively enforcing Tennessee's SORA regime against him notwithstanding Plaintiff's constitutional right against *ex post facto* punishment.

REQUEST FOR RELIEF

**WHEREFORE**, these premises considered, Plaintiff prays:

1. That the Defendants Answer this Complaint within the time provided by law.
2. That the Court grant a preliminary injunction enjoining Defendants from enforcing Tennessee's SORA regime against Plaintiff solely on the basis of his 1987 offenses.
3. That this cause be tried by a jury.
4. That judgment for Plaintiff enter against the Defendants on each count.
5. That the judgment declare that it is unconstitutional for Tennessee to retroactively impose its SORA regime on Plaintiff solely on the basis of his 1987 offenses.
6. That the judgment permanently enjoin Defendants from enforcing Tennessee's SORA restrictions against Plaintiff solely on the basis of his 1987 offenses.
7. That Plaintiff be awarded nominal and compensatory damages against Defendant Metro for its retroactive enforcement of Tennessee's SORA regime on him.
8. That Plaintiff be awarded his attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).
9. That Plaintiff be awarded pre- and post-judgment interest.
10. That the court costs in this matter be taxed to Defendants.
11. That Plaintiff be awarded all other relief to which it may appear he is entitled in the interests of justice.

## 28 U.S.C. 1746 - Unsworn Declarations Under Penalty of Perjury

I declare under penalty of perjury that the factual statements in the foregoing complaint are true and correct.

_____
Fabian M. Formosa

_____
Date

Respectfully submitted,

/s/ Frank Ross Brazil
Frank Ross Brazil, #34586
Wesley B. Clark, #32611
Brazil Clark, PLLC
2901 Dobbs Avenue
Nashville, TN 37211
615-730-8619
frank@brazilclark.com
wesley@brazilclark.com

## 28 U.S.C. 1746 - Unsworn Declarations Under Penalty of Perjury

I declare under penalty of perjury that the factual statements in the foregoing complaint are true and correct.

*(signature)*

Fabian M. Formosa

March 28 - 2022

Date




Respectfully submitted,

/s/ Frank Ross Brazil
Frank Ross Brazil, #34586
Wesley B. Clark, #32611
Brazil Clark, PLLC
2901 Dobbs Avenue
Nashville, TN 37211
615-730-8619
frank@brazilclark.com
wesley@brazilclark.com