IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FABIAN MARIEUS FORMOSA,      )
                                       )
      Plaintiff,                 )
                                       )      NO. 3:22-cv-00213
v.                                 )      JUDGE RICHARDSON
                                       )
WILLIAM LEE et al.,               )
                                       )
      Defendants.         )

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is the joint motion (Doc. No. 16, "Motion") to dismiss the amended complaint (Doc. No. 13) filed by Defendants William B. Lee and Director David B. Rausch.[1] The Motion is supported by an accompanying memorandum in support (Doc. No. 17). Plaintiff filed a response (Doc. No. 21), and Defendants filed a reply (Doc. No. 22). Defendants[2] request dismissal on the grounds of so-called *Younger* abstention due to ongoing state-court criminal proceedings against Plaintiff. For the reasons stated herein, the Motion is granted, and Plaintiff's claims are dismissed without prejudice.

---

[1] These two Defendants are the Governor of Tennessee and the Director of the Tennessee Bureau of Investigation ("TBI"), respectively.

[2] In their Motion, the two moving Defendants refer to themselves as "State Defendants." (Doc. No. 16). Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") was a Defendant in this action until October 17, 2022. (Doc. No. 32). On October 14, 2022, Plaintiff filed a Rule 21 motion to dismiss Metro as a Defendant (Doc. No. 30), which the Court granted (Doc. No. 32). Therefore, the Court refers to the remaining Defendants as "Defendants," a term that—as thus defined—has the same meaning as "State Defendants" used in the Motion.

In discussing the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 ("SORA."), the undersigned does not write on a blank slate. Plaintiff is one of various plaintiffs in several pending cases challenging the application and/or constitutionality of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 ("SORA."). Plaintiff brings this action under 42 U.S.C. § 1983 and alleges that subjecting him to SORA's requirements violates the Ex Post Facto Clause of the United States Constitution and therefore his constitutional right against retroactive punishment. (Doc. No. 13).

The undersigned has written at length about the history of SORA and the evolution of the requirements it imposes on individuals subject to the Act. *See*, *e.g.*, *Doe #11 v. Lee*, 3-22-cv-00338, 2022 WL 2181800 (M.D. Tenn. June 16, 2022). For the purposes of resolving the pending Motion, the undersigned need not repeat himself in full here as to the legislative history of SORA and the details of its many requirements. For present purposes, suffice it to say that in 1994, Tennessee passed its first sex-offender registration statute ("SORMA"), which required any individual convicted of a qualifying offense to register with the Tennessee Bureau of Investigation (TBI) within ten days of being released without supervision via probation or parole, or incarceration. *See id.* at *2. "In the decade that followed, the General Assembly repeatedly amended SORMA to expand its scope, increase its reporting requirements, and reduce the level of confidentiality of registry information." *See id.* The potentially most significant amendments came in 2003 when the

---

[3] The facts contained in this section are taken from the amended complaint (Doc. No. 13) and are taken as true for the purposes of resolving the pending Motion. As to the facts pertaining to the legislative history of SORA, however, the Court relies on facts that are judicially noticeable. *See Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 459 n.5 (N.D. Cal. 2019) ("A statute's legislative history constitute[s] judicial facts sufficiently capable of accurate and ready determination and is therefore judicially noticeable") (alteration original) (internal quotation marks omitted).

General Assembly enacted legislation restricting where a registrant could live, work, and/or travel. *See id.* The following year, the General Assembly repealed SORMA and replaced it with SORA, (*see id.*), which remains in effect today and is at the center of this litigation.

In 1988, six years before Tennessee had any form of sex-offender registration law, Plaintiff was convicted in Davidson County, Tennessee Criminal Court of three counts of Aggravated Rape under T.C.A. § 39-2-603 (since amended) for conduct that occurred in 1987. (Doc. No. 13 at 3). As a result, he was sentenced to three concurrent terms of twenty-five years imprisonment. (*Id.*).

Since his conviction in 1988, Plaintiff has violated the requirements under SORA several times. (*See id.* at 9). And there are ongoing state-court criminal proceedings against him for alleged violations of SORA's requirements. (*See id.* at 12) ("At the time of the filing of this Complaint, Plaintiff stands accused of violating SORA in the General Sessions Court for Dickinson County, Tennessee.").

On March 28, 2022, Plaintiff initiated this action by filing the original complaint, wherein he alleged that based on the date of his conduct underlying his conviction (1987) SORA in its entirety violates the Ex Post Facto Clause of the United States Constitution as applied to him. (Doc. No. 1). In the complaint, Plaintiff requested a preliminary and permanent injunction to enjoin Defendants from enforcing SORA against Plaintiff. (*Id.* at 14). Plaintiff further requested a declaratory judgment that retroactive application of SORA to Plaintiff for the conduct that took place in 1987 is unconstitutional. (*Id.*). Plaintiff also requested damages and attorney's fees. (*Id.*).

On April 27, 2022, Defendants filed a motion to dismiss the complaint at Doc. No. 1 on the basis that *Younger* abstention applied. (Doc. No. 9). Instead of responding to the *Younger* issue raised by Defendants by filing a response, Plaintiff filed an amended complaint that included a

narrowed set of requested relief. (Doc. No. 13). The amended complaint remains the operative complaint in this case.

Though Plaintiff still seeks declaratory judgment and injunctive relief, he wishes to limit this relief to "a prospective basis only and explicitly exclude[] from his requested relief any relief whatsoever from criminal prosecutions for any alleged violations" of SORA. (*Id.* at 13). Specifically, Plaintiff requests a preliminary injunction and a permanent injunction enjoining Defendants from enforcing SORA against Plaintiff, based on his conduct that took place in 1987, with respect to any potential SORA violations that may occur *on* or *after* the date of the Court's order granting such relief. (*Id.* at 15). Plaintiff also requests a declaratory judgment, "only for March 29, 2022 forward,"[4] that it is unconstitutional for Defendants "to retroactively impose its SORA regime" on Plaintiff based on his 1987 conduct. (*Id.* at 15). It is plain to see that Plaintiff requests a declaratory judgment fashioned in such a way to ostensibly prevent direct interference with imposition of SORA's requirements in the related ongoing state-court proceedings, in what is a rather transparent attempt to avoid *Younger* abstention.

As mentioned above, Defendants moved to dismiss the amended complaint on the grounds that *Younger* abstention favors dismissal.

## LEGAL STANDARD

As the undersigned has observed on at least one prior occasion, there is some disagreement among courts as to whether a request for dismissal based on the application of *Younger* abstention is brought more appropriately under Rule 12(b)(1) or under Rule 12(b)(6). *Cooper v. Rapp*, No. 2:16-CV-00163, 2016 WL 7337521, at *5 n.6 (S.D. Ohio Dec. 19, 2016), *aff'd*, 702 F. App'x 328

---

[4] The Court construes Plaintiff here to be requesting that the Court limit the declaration in such a way that it does not purport to say anything about whether the application to Defendant of the SORA regime, based on his 1987 conduct, violated Plaintiff's rights prior to March 29, 2022.

(6th Cir. 2017). As far as the undersigned has been able to determine, neither the Supreme Court nor the Sixth Circuit has spoken definitely on this issue. The Court need not belabor the point, but it does note that there are arguments to be made in support of either approach. Ultimately, the Court concludes that a motion to dismiss grounded on *Younger* abstention is more appropriately grounded in Rule 12(b)(1) than Rule 12(b)(6). This is because such a dismissal plainly is one that is not on the merits,[5] and a dismissal under Rule 12(b)(6) generally is a dismissal on the merits while a dismissal under Rule 12(b)(1) is not. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 916 (6th Cir. 1986) ("Normally, Rule 12(b)(6) judgments are dismissals on the merits and Rule 12(b)(1) dismissals are not."). Put differently, a court that dismisses a case based on *Younger* abstention has not dismissed under Rule 12(b)(6), because it has not dismissed on the merits. *! Wilkins v. Jakeway*, 183 F.3d 528, 533 (6th Cir. 1999) ("Despite what the court said about deciding the matter as a decision on the merits under 12(b)(6), what the court did was to effectively decline to reach the merits of Plaintiff's claims as to the individual Defendants."). Thus, "this Court will consider Defendants' argument for dismissal based on *Younger* abstention as an argument for dismissal under Rule 12(b)(1)." *Cooper*, 2016 WL 7337521, at *5 n.6.

Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007).

There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial and factual attacks. *Gentek Bldg. Products, Inc. v. Sherman-Williams Co.*, 491 F.3d 320, 330 (6th Cir.

---

[5] This is clear from, among other things, the fact that (as discussed below) the usual procedure where *Younger* abstention is applicable is to stay the (federal) case; obviously, if the applicability of *Younger* generally warrants only a mere stay, it hardly can be said to indicate an adjudication on the merits.

2007). A facial attack challenges merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true. *Id.* If those allegations establish cognizable federal subject-matter jurisdiction, jurisdiction exists. *Id.* A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. *Id.*

Defendants bring a facial attack. That is, they rely solely on the allegations of the complaint itself to challenge the appropriateness of this Court's exercise of subject-matter jurisdiction, arguing from the face of the complaint itself that *Younger* abstention is applicable such that the Court should not exercise jurisdiction. (Doc. No. 17 at 2). The Court therefore takes the allegations in the complaint as true.

<u>DISCUSSION</u>

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court "held that absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions."[6] *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989) (citing *Younger*, 401 U.S. at 43–44). The underlying concern of *Younger* is the "threat to our federal system posed by displacement of state courts by those of the National Government." *Moore v. Sims*, 442 U.S. 415, 423 (1979). Expressing this concern slightly differently, the Sixth Circuit has stated that "*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity. *Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017). Accordingly, when it does apply, "*Younger* abstention requires the federal court to defer to the state proceeding." *Coles v. Granville*,

---

[6] As indicated below, it is now well-established *Younger* abstention can apply not only when *the enjoining of* state criminal proceedings is sought (or otherwise portended) via the federal litigation, but also when other (including less direct and less impactful) forms of interference with state criminal proceedings is portended by the federal litigation.

448 F.3d 853, 865 (6th Cir. 2006). *Younger* abstention is applicable where three requirements are satisfied: "(1) there must be [related] on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges."[7] *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008) (quoting *Sun Refining & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990)). And importantly, in addition to inquiring into the satisfaction of these three stated requirements, "[i]n deciding whether the *Younger* abstention applies, a court must determine, at the threshold, whether litigating claims that are present could interfere with an ongoing state proceeding." *See Koranda v. City of Chicago*, No. 05-C-1856, 2005 WL 6242047, at *3 (N.D. Ill. Aug. 2 2005) (internal quotation marks omitted); *Berrada Properties Management Inc. v. Romanski*, 608 F. Supp. 3d 746 (E.D. Wisc. 2022) ("As a threshold matter, *Younger* is inapposite unless the federal plaintiff's requested relief would actually interfere with an ongoing state court proceeding."). Therefore, once a court is satisfied that there are related ongoing state-court proceedings, a court should address whether the federal litigation would interfere with the ongoing state proceeding before reaching the remaining *Younger* requirements. It is appropriate therefore to think of the potential of the federal litigation to interfere with an ongoing state proceeding as being a preliminary—and actually *primary* or "threshold"—requirement for the application of *Younger* abstention.

The parties do not dispute that there are related ongoing state-court criminal proceedings against Plaintiff for alleged violations of SORA. (Doc. Nos. 13 at 12, 21 at 2). Specifically, Plaintiff stands accused of failing to timely register or report, failure to report after release or

---

[7] Although the Court has not found case law specifically so stating, it seems that the requisite "ongoing state judicial proceedings" must be proceedings that are somehow at least *potentially implicated by the federal lawsuit*. Only "ongoing state proceedings" fitting this description would raise the concerns that *Younger* is intended to address.

incarceration, and failure to timely disclose information to the designated law enforcement agency. (Doc. No. 21 at 2). The parties also do not dispute that the related ongoing state-court criminal proceedings involve an important state interest. (*Id.* at 5); *see Doe v. Lee*, 3-20-cv-00610, 2020 WL 4926607, at *4 (M.D. Tenn. Aug. 21, 2020) ("Additionally, it is axiomatic that state criminal proceedings involve important state interests.") (internal citation omitted). The Court agrees with the parties that the ongoing state-court criminal proceedings against Plaintiff for alleged violations of SORA's requirements satisfy the first and second requirements of *Younger*.

Therefore, the Court is left to address two remaining issues under *Younger*. First, Plaintiff takes issue with whether the federal action would in fact interfere with the state-court criminal proceedings. Second, Plaintiff sets forth several arguments as to why third prong of *Younger* is not fulfilled. The Court addresses each argument in turn below.

1. **Whether the relief Plaintiff requests in this federal action would interfere with the state-court criminal proceedings**

Plaintiff contends that the relief he seeks is prospective and therefore does not threaten to interfere with the state-court criminal proceedings. (Doc. No. 21 at 5). As mentioned, Plaintiff requests that the Court grant a preliminary and permanent injunction "enjoining Defendants from enforcing Tennessee's SORA regime against Plaintiff based on his 1987 offenses for any conduct occurring on or after the date the Court enters an order granting injunctive relief." (Doc. No. 13 at 15). As for a declaratory judgment, Plaintiff requests that the Court "declare that it is unconstitutional for the Defendants to retroactively impose its SORA regime on Plaintiff based on his 1987 offenses." (*Id.*). He then states that "[t]his request is prospective in nature, and Plaintiff requests this declaration only for March 29, 2022 forward." (*Id.*).

Although *Younger* abstention typically refers to the decision of a federal court declining to enjoin a state-court criminal prosecution, "[t]he relief sought [by a plaintiff in the federal action]

need not directly interfere with an ongoing proceeding or terminate an ongoing proceeding in order for *Younger* abstention to be required." *See 31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003). Indeed, "[i]n order to decide whether the federal proceeding would interfere with the state proceeding, we look to the relief requested and the *effect* it would have on the state proceedings." *See id.* (emphasis added). Though Plaintiff attempts to shape his relief as purely prospective, thus seeking to avoid direct interference with the related ongoing state-court criminal proceedings, the Court is not convinced that the total effect of the requested relief is merely prospective in nature.

As for the requested injunctive relief, Plaintiff shapes this relief to restrict Defendants from acting only against future actions of Plaintiff with respect to Plaintiff's obligations under SORA— *i.e.* they would be enjoined from enforcing SORA against Plaintiff only for his (potential) future alleged violations of SORA's requirements. On the one hand, it is true that the criminal proceedings against Plaintiff for alleged violations of SORA that occurred prior to the dates of the Court's order would not be directly inhibited. But on the other hand, the Court finds that such relief would not be merely prospective in its effect on the ongoing state-court criminal proceedings. Even without directly interfering with the state-court criminal proceedings, the relief would cast a shadow over the state court in adjudicating the rights of Plaintiff in the state court, especially if the court were confronted with an ex post facto argument as to the requirements to which Plaintiff stands accused of violating. Consider a situation in which Plaintiff raises an ex post facto challenge in the criminal proceedings as to the SORA requirements he is accused of violating, but this Court has already issued a preliminary injunction (which necessarily includes a decision that Plaintiff would be likely to succeed on the merits of his ex post facto argument) temporarily enjoining Defendants from enforcing SORA against Plaintiff for hypothetical future violations of SORA's

requirements. In this instance, the state-court judge would be forced to evaluate the ex post facto challenge in the shadow of this Court's injunction (despite such injunction being framed to technically remain silent on the violations pending before the state-court judge). This strikes Court as the type of indirect interference that *Younger and its progeny* exist to prevent.

As noted, Plaintiff also requests a declaratory judgment that it is unconstitutional for Defendants to enforce SORA against Plaintiff for his conduct that occurred in 1987. (Doc. No. 13 at 15). Plaintiff requests that the declaratory judgment apply "only for March 29, 2022 forward." (*Id.*). The "fundamental purpose of the Declaratory Judgment Act is to allow a plaintiff not certain of his rights to avoid accrual of avoidable damages and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued." *See Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010) (internal quotation marks omitted). As some courts have recognized, declaratory judgment is in a sense an inherently prospective type of a relief, as it seeks to adjudicate the legal rights of parties *before* harm accrues. *See National Union Fire Ins. Co. of Pittsburgh, PA v. International Wire Group, Inc.*, 02 Civ. 10338, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003). Even given its prospective nature, however, the Supreme Court, on the same day it decided *Younger*, found that:

> [I]n cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well.

*See Samuels v. Mackell*, 401 U.S. 66, 73 (1971). Therefore, although Plaintiff seeks to limit his request for a declaratory judgment to a prospective basis, as recognized by the Court in *Samuels*, the relief (even with such limitation) poses the same issues as to interference with the state-court proceedings as the injunction.

In summary, the overlap of issues between those presented before this Court and those implicated in the state-court proceedings presents a sufficient concern of interference to implicate *Younger*. The Court therefore proceeds to address the third *Younger* requirement directly below.

### 2. Whether Plaintiff has an adequate opportunity to raise his constitutional claim in state court

Generally, "Tennessee courts provide a criminal defendant with an adequate opportunity to raise constitutional challenges." *See Doe*, 2020 WL 4926607, at *4. As mentioned above, Plaintiff argues that for several reasons, he cannot raise his constitutional claim in the state-court criminal proceedings. The Court addresses each in turn below.

#### a. Plaintiff's ability to raise an ex post facto challenge to SORA requirements that he is not accused of violating in the state-court criminal proceedings

As Plaintiff points out, the requirements that he challenges as violative of the Ex Post Facto Clause are not those that he is being accused of violating in the ongoing state-court criminal proceedings. He therefore argues that he cannot raise the ex post facto challenges raised in this action in the state criminal proceedings as an affirmative defense. (Doc. No. 21 at 6–7). Implicit in Plaintiff's argument is the notion that the state-court judge would not be receptive to an argument on whether requirements to which Plaintiff is subject, but which are not directly at issue in the criminal case (*i.e.* that Plaintiff in the criminal case is not accused of violating), violate the Ex Post Facto Clause. Plaintiff, however, has not persuaded the Court that a state-court judge would prevent Plaintiff from making such an argument and therefore deny Plaintiff an adequate opportunity to raise his constitutional claim, so as to render inapplicable the third prong of *Younger*.

Given that Plaintiff's conduct occurred in 1987 and that no version of SORA was passed until 1994, the Court assumes that Plaintiff may make an ex post facto argument in the state court

as to the SORA requirements he is accused of violating(*i.e.* imposition of such requirements against Plaintiff for conduct that occurred in 1987 violates the Ex Post Facto Clause). Assuming the possibility that the state-court judge may be confronted with an ex post facto argument[8], the Court finds it plausible that the state-court judge would not choose to view SORA's requirements in isolation from one another,[9] as Plaintiff suggests, but instead would evaluate SORA's requirements as a group. If the state-court judge wished to take the latter analytical avenue, Plaintiff's argument that he cannot raise the ex post facto argument as to the requirements of which he is not being accused of violating before the state-court judge falls flat. Indeed, in such a circumstance, the state-court judge would be interested in considering all SORA requirements imposed upon Plaintiff in determining whether SORA violates the Ex Post Facto Clause as to the date of Plaintiff's conduct.

More importantly, Plaintiff would be free to make such an argument before the state-court judge, and therefore would have an adequate opportunity to raise before the state-court judge the very constitutional claim regarding the SORA requirements he challenges in this court. Therefore, although the SORA requirements that Plaintiff challenges in this federal action are not those of which he stands accused of violating in the state-court proceedings, the Court finds that this fact does not prevent fulfillment of the third prong of *Younger*.

---

[8] The Court is unaware of any reason why Plaintiff would be prohibited from raising in the criminal proceedings an ex post facto challenge as to the SORA requirements of which he is accused of violating. As noted, "Tennessee courts provide a criminal defendant with an adequate opportunity to raise constitutional challenges." *See Doe*, 2020 WL 4926607, at *4. The proceedings in the state court are based on Plaintiff's conduct that occurred in 1987, several years before SORA or SORMA were passed by the Tennessee legislature.

[9] Since every single one of the SORA requirements was created after 1987, the state-court judge would have every reason to treat all such requirements the same way with respect at least to the timing issues that are vital in ex post facto analysis.

*b. Plaintiff's ability to obtain prospective relief in state criminal proceedings*

Plaintiff next argues that the third requirement of *Younger* is not fulfilled because even if he could raise his argument that certain SORA requirements violate the Ex Post Facto Clause in state court, the state court does not have the power to grant the equitable relief Plaintiff seeks. (Doc. No. 21 at 6). In other words, although the state court could dismiss the pending criminal case against Plaintiff, it does "not possess the authority to remove a party from the sex offender registry, nor [does it] possess the authority to enjoin [TBI] from applying [SORA] to a particular individual." (*Id*). This Court has rejected an ostensibly identical argument in *Doe v. Lee*. 2020 WL 4926607, at *5–*6. In *Doe*, the plaintiff sought to avoid application of *Younger* abstention by arguing that even if the plaintiff was successful in his ex post facto challenges, the state criminal court would not be able to issue an order stopping the enforcement of SORA. *See id*. The Court explained:

> The Court easily rejects these arguments. If the Court were to accept the first argument [that the state court cannot order injunctive relief], it would essentially erode the *Younger* abstention doctrine; the exception would swallow the rule. It is common for plaintiffs, when challenging state laws on constitutionality grounds, to seek prospective relief in the form of enjoining state officers from enforcing those state laws they allege are unconstitutional. If merely seeking such relief in a federal suit took the case out of the realm of the *Younger* abstention doctrine, nearly every case involving a challenge to a state law could be entertained in a federal court, despite any ongoing state proceedings.

*See id*. at *6. Although the Court in *Doe* evaluated this argument in considering an exception to *Younger* rather than the third requirement of *Younger*, the Court's reasoning applies equally as soundly. Plaintiff cannot avoid *Younger* through seeking injunctive and declaratory relief in federal court instead of raising his constitutional claims in the ongoing criminal state-court proceedings. True, the state court would be unable to grant the particular type of relief he seeks, but the third requirement of *Younger* asks whether Plaintiff has an adequate opportunity to raise his

constitutional claim, not whether the particular relief will ultimately be available to him. *See O'Neill*, 511 F.3d at 643; *see also Monroe v. Phieffer*, 2-19-cv-02174, 2020 WL 7239594, *5 (E.D. Cal. Dec. 9. 2020) ("*Younger* requires only the absence of procedural bars to raising federal claims in state proceedings."). If Plaintiff is successful on an ex post facto challenge in the state court, the result could be dismissal of the criminal case, at which point Plaintiff could seek equitable relief in a civil suit either in state court or in federal court. The immediate unavailability of the relief sought by Plaintiff in the state forum, however, does not impede the fulfillment of the third *Younger* requirement.

### c. Whether Ward forecloses Plaintiff's constitutional challenge

Plaintiff argues that Tennessee Supreme Court's opinion in *Ward v. State*, 315 S.W. 3d 461 (Tenn. 2010), renders futile any argument in the state-court criminal proceedings that the SORA requirements at issue in the federal action violate the Ex Post Facto Clause. The Court agrees with Plaintiff that "[w]here the state's highest court has ruled against the constitutional position taken by the plaintiffs in the federal court, the federal court is not obligated to abstain and thus force the plaintiffs to pursue futile claims and appeals in the state court system." *See Tolbert v. City of Memphis, Tenn.*, 568 F. Supp. 1285, 1289–1290 (W.D. Tenn. 1983). The Court views *Younger*'s requirement that there must be an adequate opportunity for a plaintiff to raise a constitutional challenge in state proceedings as equivalent to "a realistic opportunity to deal with the merits of a constitutional claim . . . ." *See W.P. v. Poritz*, 931 F. Supp. 1187, 1196 (D.N.J. 1996); *Mastin v. Fellerhoff*, 526 F. Supp. 969, 971 (S.D. Ohio 1981) ("it would be unjust to require plaintiffs in this case to pursue a futile appeal through the state courts when the issue has already been ruled upon by the highest court in Ohio."). And where a state's highest court has already ruled on the constitutional issue at hand, the principles of *Younger* are not well served.

*Ward*, however, is not dispositive on the question of whether the requirements that Plaintiff challenges in this federal action violate the Ex Post Facto Clause. In *Ward*, the Tennessee Supreme Court determined whether mandatory registration[10] as a sex offender and a mandatory sentence of community supervision for life in addition to incarceration were collateral consequences of the defendant's guilty plea such that he was not required to be apprised of them before entering the

---

[10] It is not entirely clear in *Ward* whether the Tennessee Supreme Court addressed *only* the mandatory registration requirement, meaning the (foundational) requirement to register as a sex offender under SORA, or both the mandatory registration requirement *and* the restrictions that are imposed on anyone thus registering as a sex offender. In *Ward*, the court explained that SORA has specific registration requirements and listed the specific sub-parts of the statute that detail how those required to register do so. *See Ward*, 315 S.W. 3d at 468. The court then went on to explain that SORA "imposes certain other requirements on sexual offenders," and proceeded to list several restrictions on the behavior of those registered as sex offenders under SORA, such as not living within 1,000 feet of the property line of the offender's former victim. *See id.* At times, it is not entirely clear whether the court in *Ward* intended to address only the mandatory registration requirement, or also the restrictions that are imposed on those who are registered as a sex offender.

The Court need not resolve this issue, however, as the Court finds that *Ward* is not on-point regarding the issue of whether the registration requirement violates the Ex Post Facto Clause. Even if *Ward* was determinative on this question, given that the court in *Ward* may have been addressing only the mandatory registration requirement under SORA and not additional SORA requirements, the Court is hard-pressed to understand how *Ward* would control as to Plaintiff's constitutional challenges in the federal action. As noted, the Court understands Plaintiff to be challenging not SORA's mandatory registration requirement, but the seemingly more onerous restrictions imposed on those registered as sex offenders under SORA, such as the SORA's "geographic restrictions, exclusion zones, publication of his current residence [and] impairment of his right to travel and associate with his family. . . ." (Doc. No. 21 at 5). Because it remains possible that the court in *Ward* did not address these restrictions, but rather only the mandatory registration requirement, Plaintiff's Ex Post Facto challenge raised in this federal action would not be automatically foreclosed by *Ward*. Moreover, it seems plausible to the undersigned that the Tennessee Supreme Court today, if faced squarely with an entirely different set of SORA restrictions than was at issue in *Ward* and asked whether those restrictions are punitive for purposes of ex post facto analysis, would answer the question of punitiveness differently than the way it answered it in *Ward* for purposes of evaluating the validity of a guilty plea

In any event, the Court finds that *Ward* did not resolve the ex post facto issue as to *any* requirement under SORA. Therefore, the Court need not attempt to determine what the *Ward* court had in mind when it referred to "registration requirement" but proceeded to immediately thereafter discuss the restrictions imposed on those who are required to register as a sex offender. And for the purposes of this Court's discussion of *Ward*, the Court refers to the "mandatory registration requirement," though the Court views it as an open question as to what exactly the court in *Ward* thought as encompassed by this requirement, *i.e.* whether it included the restrictions imposed on those registered as a sex offender under the Act.

plea.[11] *See Ward*, 315 S.W. 3d at 466–467. As the court explained in *Ward*, before a defendant pleads guilty, he must be advised "'if applicable, that a different or additional punishment may result by reason of his prior convictions or other factors which may be established in the present action after the entry of his plea.'" *See id.* (quoting *State v. Mackey*, 553 S.W. 2d 337, 341 (Tenn. 1977), *superseded on other grounds*, *Garcia v. State*, 425 S.W. 3d 248 (Tenn. 2013)). However, "[c]ourts are constitutionally required to notify defendants of only the direct consequences—not the collateral consequences—of a guilty plea." *See id.* at 467. Therefore, the court in *Ward* was faced with the question of whether SORA's mandatory registration requirement was punitive and a direct consequence of the defendant's guilty plea (in which case he must have been advised of such consequence) or whether it was non-punitive and collateral (in which case it would not have been necessary to advise him of such a consequence).

In addressing the registration requirement, the court looked to the "legislative intent" of SORA to determine whether the registration requirement was punitive. *See id.* at 469. Based on the plain language of the statute, the court found that the statute evinced a "nonpunitive intent to protect the public. In addition, as noted by the General Assembly, the registration requirement does not inflict additional punishment on [the defendant] nor does it alter the range of punishment." *See id.* at 470. The court also noted that other courts have found similar registration requirements in sex offender registration statutes nonpunitive in determining whether such registration

---

[11] Plaintiff's argument that *Ward* precludes any opportunity to litigate his ex post facto challenge in state court pertains only to *Ward*'s resolution of whether *the mandatory registration requirement* was collateral and punitive. Although the court in *Ward* determined that *the mandatory sentence of community supervision for life* was punitive, the sentence was not imposed pursuant to SORA. *See Ward*, 315 S.W. 3d at 473. *Ward*'s analysis of the mandatory sentence of community supervision for life therefore has no import on Plaintiff's ability to raise his constitutional argument in state court, and the Court therefore does not address that analysis here.

requirements violate the Ex Post Facto Clause. *See id.* at 471–472. The courts analysis, however, went no further.

Plaintiff argues that *Ward*'s holding that the mandatory registration requirement under SORA is nonpunitive for purposes of apprising criminal defendants of the consequences of their guilty plea is dispositive on the issue of whether the requirements under SORA are nonpunitive for the purposes of the Ex Post Facto Clause. And indeed, Plaintiff appears correct that the Tennessee courts of appeals have read *Ward* as holding that SORA's mandatory registration requirement is nonpunitive for the purposes of the Ex Post Facto Clause. *See e.g.*, *Wiggins v. State*, No. M2019-00488, 2019 WL 1092729, at *2 (Tenn. Ct. App. 2019) (explaining that the court in *Ward* "held" that the "additional requirement of the sexual offender registry, while retroactive in its application . . . , did not violate either state or federal *ex post facto* prohibitions.") (internal quotation marks omitted); *Clark v. Gwyn*, 2019 WL 1568666, at *5–*6 (Tenn. Ct. App. Apr. 11, 2019) (citing *Ward* as addressing both prongs in the ex post facto analysis on the question of whether SORA violates the Ex Post Facto Clause).

Given that the Tennessee courts of appeals have interpreted *Ward* as deciding the issue of whether SORA's registration requirement violates the Ex Post Facto Clause, the Court does not fault Plaintiff for contending that *Ward* is controlling on this question. Simply put, however, in *Ward*, the ex post facto question was never put before the Tennessee Supreme Court, and the court accordingly did not engage in the proper ex post facto analysis as mandated by binding (United States) Supreme Court precedent. As illustrated by this Court's opinion in *Doe #11 v. Lee*, the Supreme Court has prescribed a two-part test to determine when a law violates the Ex Post Facto Clause—the second part of which requires the court to consider seven distinct factors (reformulated by the Sixth Circuit into five factors). *See Doe #11*, 2022 WL 2181800, at *14–*15

(citing *Smith v. Doe*, 538 U.S. 84 (2003), *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963)). Under *Smith*, in determining whether a law is punitive for ex post facto purposes, a court "asks whether the legislature *intended* the law to impose punishment. If not, the Court then asks whether, despite the legislature's 'intention . . . to enact a regulatory scheme that is civil and nonpunitive,' the statutory scheme is nonetheless 'punitive either in purpose or effect.'" *See Doe #11*, 2022 WL 2181800, at *14 (quoting *Smith*, 538 U.S. 92). If a court reaches the second part of the test, the court must consider seven factors noted in the Supreme Court's opinion. *Mendoza-Martinez*. *See Smith*, 538 U.S. at 97.

The court in *Ward* understandably did not go through the two-part test as required by *Smith* and *Mendoza-Martinez*, as it was not called on to determine whether the registration requirement violated the Ex Post Facto Clause. Although some of the court's analysis in *Ward* could be viewed as overlapping with that required as part of the ex post facto analysis under *Smith* and *Mendoza-Martinez*, the analysis is by no means co-extensive with that required to determine whether the registration requirement at issue in *Ward* violated the Ex Post Facto Clause.

As Plaintiff points out, however, the Tennessee courts of appeals have interpreted *Ward* as on-point for the question of whether the mandatory registration requirement under SORA violates the Ex Post Facto Clause. And as the Sixth Circuit has acknowledged, "when 'an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *See Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 932 (6th Cir. 2020) (quoting *West v. AT&T*, 311 U.S. 223, 237 (2020)). In this instance, the Tennessee courts of appeals have treated *Ward* as dispositive on the question of whether SORA's requirements violate the Ex Post Facto

Clause. This Court, however, is convinced that the Tennessee Supreme Court would disagree with those courts' treatment of *Ward*.

To be clear, this Court is not convinced that the Tennessee Supreme Court would conclude that those courts reached the wrong result in finding that the Ex Post Facto Clause did not prohibit the application of SORA's requirements under the circumstances presented in those cases. But that is immaterial here, where the question is whether *Ward in particular* dictated the result reached by those courts; to that question, this Court is firmly persuaded that the answer is "no" because *Ward*—for good reason, given that no ex post facto issue was before the court—did not go through the ex post facto analysis required under Supreme Court precedent. And the Court is confident that if the Tennessee Supreme Court were squarely presented with the question of whether application to Plaintiff SORA's mandatory registration requirement violated the Ex Post Facto Clause, the court would agree that *Ward* does not prescribe the answer to such question, and that the Tennessee Supreme Court would do what any court in the United States should do to answer that question: engage in the required analysis set forth by the Supreme Court in determining whether application of a law in a particular context violates the Ex Post Facto Clause. Therefore, the Court is not obliged to follow the findings of the Tennessee courts of appeals, and under *West*, may disregard their findings based on "persuasive data" that the Tennessee Supreme Court would not find *Ward* dispositive on the question of whether SORA violates the Ex Post Facto Clause. *See West*, 311 U.S. at 237. Although the Tennessee courts of appeals have perhaps indicated something to the contrary, this Court is satisfied that the highest state court in Tennessee has *not* (in *Ward* or otherwise) addressed whether SORA requirements, the registration requirement, or those Plaintiff challenges in this federal action, violate the Ex Post Facto Clause. Therefore, it would not be futile for Plaintiff to raise his constitutional argument in the state court.

### 3. Whether extraordinary circumstances exist such that the Court should not abstain under *Younger*

Plaintiff argues that even if all *Younger* requirements are met, that the Court should nonetheless decline to abstain from exercising jurisdiction because he faces irreparable injury if he is not permitted to proceed with his requested relief. (Doc. No. 21 at 10–11). There are several exceptions to the applicability of *Younger*, one of which is when a plaintiff will suffer "irreparable injury absent equitable relief." *See Sun Refining & Marketing Co. v. Brennan*, 921 F.2d 635, 642 (6th Cir. 1990). While extraordinary circumstances are usually shown through bad faith or harassment in the state-court proceedings, *Younger* recognizes that a plaintiff can demonstrate extraordinary circumstances giving rise to irreparable injury outside these specific instances. *See Marathon Petroleum Co. LLC v. Stumbo*, 528 F. Supp. 2d 639, 645 (E.D. Ky. 2007) (citing *Younger*, 401 U.S. at 403).

Plaintiff's arguments as to why he will suffer irreparable harm if his federal lawsuit is not allowed to proceed are nothing more than a regurgitation of his arguments as to why the third *Younger* prong cannot be fulfilled, and therefore, the Court rejects them for the reasons stated above.

### 4. Whether to Dismiss or Stay the Action

"When all [] requirements for *Younger* are fulfilled, a court is faced with the decision of whether to stay the federal action during the pendency of the state action or instead to dismiss Plaintiff's claims without prejudice." *See Carter v. Tennessee Dep't of Child Services*, 3-22-cv-00247, 2023 WL 2027804, at *6 (M.D. Tenn. Feb. 15, 2023). While courts generally favor a stay of the federal proceedings when a plaintiff seeks money damages and equitable relief, "dismissal without prejudice is proper under *Younger* for equitable claims." *See Doe*, 2022 WL 1164228, at *9. Plaintiff seeks only equitable relief against Defendants. Though Plaintiff sought damages

against Metro (Doc. No. 13), Metro has since been dismissed as a Defendant in this action. (Doc. No. 32). Therefore, the Court finds that dismissal without prejudice, rather than a stay of this federal action is proper.

**5. A final point**

The Court is constrained to make a final point, one that falls into the category of "be careful what you wish for." Both the granting of a preliminary injunction, permanent injunction, and the granting of a declaratory judgment are matters within the discretion of the district court. *See Hornback v. Brotherhood of R.R. Signalmen*, 346 F.2d 161, 164 (6th Cir. 1965) ("'The granting or denial of a temporary injunction pending final hearing is within the sound judicial discretion of the trial court. . . ."; *Ass'n of American Publishers, Inc. v. Frosh*, 607 F. Supp. 3d 614, 619 (D. Md. 2022) ("But even where a plaintiff has satisfied the requirements for a permanent injunction, whether to grant the injunction still remains in the 'equitable discretion' of the court.") (internal quotation marks omitted); *Frankenmuth Mutual Insurance Co. v. Balis Campbell Inc.*, 510 F. Supp. 3d 482, 501 (E.D. Ky. 2020) ("[F]ederal district courts possess unique and substantial discretion in deciding whether to declare the rights of litigants . . . .") (internal quotation marks omitted). Perhaps even more to the point here, the precise scope, and framing of the terms, of a preliminary injunction, permanent injunction, or declaratory judgment are also matters within the discretion of the district court. *See E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 843 (6th Cir. 1994) (explaining that the district court has "broad discretionary power to craft" injunctions to the "specific violations found to ensure" compliance with the law); *Logical Operations, Inc. v. CompTIA Inc.*, 6-20-cv-06238, 2021 WL 1099619, at *3 (W.D.N.Y. Mar. 23, 2021) ("it is entirely within the discretion of the district court to determine the scope and wording of a declaratory judgment.") (internal quotation marks omitted). In this case, there is every reason to believe that

Plaintiff has framed his requests for an injunction and a declaratory judgment in particular terms with the specific objective of avoiding *Younger* abstention. Suppose Plaintiff had succeeded in his objective of convincing the court that he had avoided *Younger* abstention via the simple expedient of framing his requests the way he did. In that case, even if the Court otherwise were inclined to grant injunctive or declaratory relief, the Court may well have had grave concerns about exercising its discretion to grant an injunction or a declaration *with the limitations suggested by Plaintiff*, potentially finding such limitations notably unsatisfying in terms of addressing *as a whole* the issues raised by Plaintiff, unjustified by the circumstances of the case, and based on one party's sheer tactical considerations that should not drive the scope of this kind of relief.

## CONCLUSION

For the reasons stated herein, the Motion at Doc. No. 16 is GRANTED, and Plaintiff's claims against Defendants are DISMISSED without prejudice.


IT IS SO ORDERED.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE